## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW M. SHECKTOR and | : | CIVIL ACTION |
| JEAN B. MARSHMAN | : | |
| | : | |
| v. | : | HON. JOHN E. JONES, III |
| | : | |
| LOUISVILLE LADDER, INC. | : | NO. 4:09-cv-1570 |

## STATEMENT OF FACTS IN SUPPORT OF THE MOTION FOR
## SUMMARY JUDGMENT OF DEFENDANT, LOUISVILLE LADDER, INC.

Pursuant to L.R. 56.1, Defendant, Louisville Ladder, Inc. (hereinafter "Louisville Ladder"), by and through its attorneys, Sweeney & Sheehan, hereby submits this Statement of Material Facts as to which there is no genuine issue to be tried as follows:

1.     This litigation was initially commenced by Plaintiffs, Andrew Shecktor and Jean Marshman, by filing a Writ of Summons in the Court of Common Pleas of Montgomery County, Pennsylvania on July 16, 2008.

2.     On January 2, 2009, Plaintiffs filed their Complaint in the Court of Common Pleas of Montgomery County, Pennsylvania. A true and correct copy of Plaintiffs' Complaint is attached hereto as Exhibit "A."

3.     Plaintiffs' one-count Complaint sets forth only cause of action for negligence against Louisville Ladder. *See* Exhibit "A," paragraphs 12, 13, 15, 16, 17 and 20.

4.     The discovery deadline in this matter was July 29, 2011.

5.     Plaintiff's Complaint alleges that Andrew Shecktor was injured on July 16, 2006 while he was using a Louisville Ladder Model L-2323-16 aluminum extension ladder to trim branches at his home. *See* Exhibit "A," paragraphs 6, 9.

### A.     The Ladder

6.     The subject ladder consists of two 8' sections, a base section and an upper movable ("fly") section.  Each section is constructed with two side rails that are connected by rungs spaced every foot along the side rail length.  Rung locks affixed to the fly section at the third rung allow for length adjustment at one-foot increments, up to a maximum extended length of 13'.[1]

7.     The base section has shoes on the bottom, which are attached to the ladder with a fixed bolt in the rail which passes through a slot in the shoe.[2]  This design permits the shoes to swivel to ensure they can be positioned flat on different surfaces.  In addition, the slot design permits the shoes to move vertically so the shoes can be positioned flat where the ground elevations are different between the left and right rails.

8.     Andrew Shecktor was deposed in this matter on June 8, 2010. Excerpts of the deposition are attached hereto as Exhibit "D"

---

[1]  A photograph of the ladder is attached as Exhibit "B."

[2]  A photograph of the ladder shoe is attached as Exhibit "C."

9.     Andrew Shecktor purchased the subject 16' aluminum extension ladder from Home Depot on November 25, 2005.[3]  Exhibit "D," pages 34 – 36.

10.    Prior to July 16, 2006, Andrew Shecktor had used the ladder two times, once to paint his garage and another time to install a Hamm radio antenna. Exhibit "D" pages 41, 49 and 50.

11.    Andrew Shecktor read all of the warnings and labels on the ladder before July, 2006.  Exhibit "D," page 43.

12.    Andrew Shecktor had no problems with the subject ladder prior to July 16, 2006.  Exhibit "D," page 51, 54.

**B.     The Incident of July 16, 2006**

13.    Andrew Shecktor intended to use the ladder on July 16, 2006 to cut dead branches from a 120' pine tree in his backyard.  Exhibit "D," page 55.

14.    Andrew Shecktor set the ladder up one time prior to the incident, with the feet flat on the ground, two rungs overlapping, and the rung locks locked. Exhibit "D," pages 56, 60-61.[4]

---

[3] The Complaint alleged that the ladder was purchased from Wal-Mart and named Wal-Mart Stores East, L.P. as a Defendant.  During discovery, plaintiffs admitted that the ladder was purchased at Home Depot.  Pursuant to a Stipulation executed by the parties (Doc. No. 52), this Court entered an Order dismissing Wal-Mart on March 10, 2011 (Doc. No. 53).

[4] A photograph of the ground where Mr. Shecktor set the ladder up is attached as Exhibit "E."

15.    Mr. Shecktor intended to cut three branches from the tree.  He made initial cuts in each of the branches from the ground using a pruning shear and then climbed the ladder to make the final cut on each branch.  He had completely cut off two of the branches while on the ladder prior to the incident.  Exhibit "D," pages 64, 68.[5]

16.    Immediately prior to the incident, Mr. Shecktor was attempting to make the final cuts on the third branch, which was approximately 8' long and 2½" in diameter and weighed approximately 35 pounds.  Exhibit "D," pages 68, 93.

17.    Mr. Shecktor climbed the ladder to the seventh rung.  He had his left hand on a rung of the ladder and cut the branch with the pruning shear using his right hand.  Exhibit "D," pages 70, 72.

18.    Although Mr. Shecktor understood that he was supposed to keep his body centered between the rails of the ladder while on it, he had to reach as far as he could to his right in order to cut the third branch because he did not move the ladder closer to the branch.  Exhibit "D," pages 73-74.

19.    Mr. Shecktor did not secure the ladder to the tree when he set it up. Exhibit "D," page 74.

---

[5] A photograph of the pruning shear is attached as Exhibit "F."

20. When Mr. Shecktor initially set up the ladder, he made sure the feet were on the ground. There was no instability in the ladder while he was climbing, and the ladder did not flex or move while he was cutting the branch. Exhibit "D," pages 75, 76 and 80.

21. While Mr. Shecktor was cutting the third branch, it twisted and fell toward him. The branch grabbed the pruning shear Mr. Shecktor was holding in his right hand and pulled him and the ladder slightly off center to the right. Exhibit "D," pages 82-84.

22. When the ladder went to the right, Mr. Shecktor released the tool and the ladder moved back to the left. He does not know what position the ladder shoes were in following that event. Exhibit "D," page 84.

23. Mr. Shecktor then put his right hand back on the ladder and proceeded to climb down. Exhibit "D," page 85.

24. When Mr. Shecktor made his first step, the left side of the ladder dropped 1"-2" to the left. Mr. Shecktor jumped off the ladder and landed flat on both of his feet, suffering fractures. Exhibit "D," pages 85-86, 88.

### C.   Plaintiffs' Liability Theory and Expert

25.   In support of their claim, Plaintiffs have produced a report authored by a civil engineer, Richard Hughes, P.E., dated March 8, 2011.   A copy of the report of Richard Hughes is attached hereto as Exhibit "G."

26.   It is the opinion of Richard Hughes that the design of the feet on the subject ladder is defective because the slotted bolt hole in the shoe allows for improper slope of the ladder.   Mr. Hughes opines in his report that this defect caused the incident involving Andrew Shecktor.   *See* Exhibit "G."

27.   The deposition of Richard Hughes was taken in this matter on July 12, 2011.   Excerpts from that deposition are attached hereto as Exhibit "H."

28.   Richard Hughes never looked at subject ladder.   Exhibit "H," page 19.

29.   Mr. Hughes does not consider himself an expert in ladder design. Exhibit "H," page 47.

30.   Mr. Hughes never went to the scene of the incident, never looked at the ladder involved in this case and never read the deposition of Andrew Shecktor. Exhibit "H," page 53.

31.   The only information Mr. Hughes has regarding the incident was provided in a conference call with Andrew Shecktor and his lawyer on March 4, 2011.   Exhibit "H," pages 50-53.

32.   Mr. Hughes admits that the ground surface on which the ladder feet were placed at the time of the incident was not flat, and he had no information regarding whether there were any roots above the ground level. Exhibit "H," pages 71 - 72.

33.   Mr. Hughes admits that it is important for the feet of the ladder to be in contact with the ground surface as part of setting up the ladder.  Exhibit "H," page 72.

34.   Mr. Hughes admits that if the ladder moved while Mr. Shecktor was on it, it would be an indication that it was unstable and that there may have been a problem with the setup.  Exhibit "H," page 80.

35.   Mr. Hughes admits most accidents involving ladders are caused by operators in that operators make the ladder unstable in what they are doing with the ladder and in not properly setting it up.  Exhibit "H," pages 82 - 83.

36.   Mr. Hughes admits that his opinion is based on an understanding that the bottom feet of the ladder were in a relatively flat dirt surface at the time of the incident.  Exhibit "H," pages 89 – 90.

37.   Mr. Hughes was not aware when he wrote his report that the branch grabbed the tool and caused the ladder to become unstable while Mr. Shecktor was using the ladder.  Exhibit "H," page 94.

38.    Mr. Hughes has no information regarding what happened to the feet of the ladder when that occurred, does not know if they remained flat on the ground and admits he would be speculating about the condition of the feet after that part of the incident. Exhibit "H," pages 94 – 95.

39.    Mr. Hughes admitted at his deposition that although he initially believed that the ladder moved out instead of moving left or right during the incident, Mr. Shecktor testified that the ladder moved to the left an inch or two while Mr. Shecktor was climbing down the ladder, which is an indication of instability. Accordingly, Mr. Hughes cannot rule out that the incident was caused by instability of the ladder created by the manner in which Mr. Shecktor was using it. Exhibit "H," pages 98 - 101.

40.    Mr. Hughes cannot state to a reasonable degree of engineering certainty that the issue with the slot in the feet of the ladder caused the incident involving Mr. Shecktor. Exhibit "H," pages 110 - 111.

41.    Following the deposition of Mr. Hughes, Plaintiffs submitted a supplemental report from Richard Hughes dated July 21, 2011. A copy of the supplemental report is attached as Exhibit "I."

42.    In his supplemental report, Mr. Hughes attempts to undo the aforementioned deposition testimony regarding whether he can say to a reasonable

degree of certainty that the incident was not caused by instability created by Mr. Shecktor.

43.     However, neither Mr. Hughes, in his supplemental report, nor Mr. Shecktor, in his deposition, can state what the condition of the ladder feet were after the initial incident involving the tree limb which moved the ladder.

44.     As a matter of law, Plaintiffs cannot establish that the alleged defect in the ladder caused this incident.

45.     As a matter of law, Plaintiffs cannot establish that any defect in the ladder caused the incident involving Andrew Shecktor on July 16, 2006.

**WHEREFORE**, Defendant, Louisville Ladder, Inc., respectfully requests this Honorable Court to enter Summary Judgment in its favor and against the Plaintiffs.

**SWEENEY & SHEEHAN**

By:  /s/ J. Michael Kunsch
     J. Michael Kunsch
     Identification No. PA 61922
     Attorney for Defendants
     1515 Market Street, Suite 1900
     Philadelphia, Pennsylvania 19102
     Telephone (215) 563-9811
     Facsimile  215.557.0999
     michael.kunsch@sweeneyfirm.com

DATE:  AUGUST 30, 2011