IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW M. SHECKTOR and JEAN B. MARSHMAN | : : : | CIVIL ACTION |
| v. | : : | HON. JOHN E. JONES, III |
| LOUISVILLE LADDER, INC. | : | NO. 4:09-cv-1570 |

**BRIEF IN SUPPORT OF THE
MOTION FOR SUMMARY JUDGMENT OF
<u>DEFENDANT, LOUISVILLE LADDER, INC.</u>**

**I.     <u>PROCEDURAL HISTORY OF THE CASE</u>**

Plaintiffs, Andrew M. Shecktor and Jean B. Marshman, commenced this product liability action sounding in negligence by filing a Writ of Summons in the Court of Common Pleas of Montgomery County, Pennsylvania on July 16, 2008, and later filed a Complaint in civil action on January 12, 2009. *See* Exhibit "A." Defendants timely removed this action to the Eastern District of Pennsylvania on February 3, 2009, and subsequently successfully transferred the venue of this matter to this Court.

The fact discovery deadline was July 29, 2011. The parties have completed all fact and expert discovery. In accordance with the Court's March 10, 2011 Scheduling Order, Louisville Ladder, Inc. (hereinafter "Louisville Ladder") files this motion for summary judgment.

1

## II.     FACTS

Plaintiffs' one-count Complaint sets forth a cause of action for negligence against Louisville Ladder. *See* Exhibit "A," paragraphs 12, 13, 15, 16, 17 and 20. The Complaint arises out of an incident of July 16, 2006, during which Andrew Shecktor claims he was injured while he was using a Louisville Ladder Model L-2323-16 aluminum extension ladder to trim branches at his home. See Exhibit "A," paragraphs 6, 9.

### A.     The Ladder

Mr. Shecktor purchased the subject 16' aluminum extension ladder from Home Depot on November 25, 2005.[1] The subject ladder consists of two 8' sections, a base section and an upper movable ("fly") section. Each section is constructed with two side rails that are connected by rungs spaced every foot along the side rail length. Rung locks affixed to the fly section at the third rung allow for length adjustment at one-foot increments, up to a maximum extended length of 13'. The base section has shoes on the bottom, which are attached to the ladder with a fixed bolt in the rail which passes through a slot in the shoe. This design permits the shoes to swivel to ensure they can be positioned flat on different surfaces. In addition, the slot design permits the shoes to move vertically so the

---

[1] The record citations for the facts pertaining to this matter are set forth in Defendant's Statement of Facts Pursuant to L.R. 56.1 and have been omitted herein.

shoes can be positioned flat where the ground elevations are different between the left and right rails. Photographs of the ladder and the shoes are attached as Exhibits "B" and "C."

Mr. Shecktor used the ladder two times prior to the incident, once to paint his garage and another time to install a Hamm radio antenna. Mr. Shecktor confirms that he read all of the warnings and instructions on the ladder. He had no problems with the ladder prior to the incident.

### B.     The Incident of July 16, 2006

Andrew Shecktor intended to use the ladder on July 16, 2006 to cut dead branches from a 120' pine tree in his backyard. He set the ladder up one time prior to the incident, with the feet flat on the ground, two rungs overlapping, and the rung locks locked. Mr. Shecktor intended to cut three branches from the tree. He made initial cuts to each of the branches from the ground using a pruning shear and then climbed the ladder to make the final cut on each branch. He had completely cut off two of the branches while on the ladder prior to the incident.

Immediately prior to the incident, Mr. Shecktor was attempting to make the final cuts on the third branch, which was approximately 8' long and 2½" in diameter and weighing approximately 35 pounds. He climbed the ladder to the seventh rung, and had his left hand on a rung of the ladder and cut the branch with the pruning shear using his right hand. Although Mr. Shecktor understood that he

was supposed to keep his body centered between the rails of the ladder while on it, he had to reach as far as he could to his right in order to cut the third branch because he did not move the ladder closer to the branch.

While Mr. Shecktor was cutting the third branch, it twisted and fell toward him. The branch grabbed the pruning shear Mr. Shecktor was holding in his right hand and pulled him and the ladder slightly off center to the right. When the ladder went to the right, Mr. Shecktor released the tool and the ladder moved back to the left. Mr. Shecktor then put his right hand back on the ladder and proceeded to climb down. When Mr. Shecktor made his first step, the left side of the ladder dropped 1"-2" to the left and moved away from the tree. Mr. Shecktor jumped off the ladder and landed flat on both of his feet, suffering fractures.

### C. Plaintiff's Theory of Liability and Expert

In support of their claims, Plaintiffs have produced a report authored by a civil engineer, Richard Hughes, P.E., dated March 8, 2011. It is the opinion of Richard Hughes that the design of the feet on the subject ladder is defective because the slotted bolt hole in the shoe *allows* for improper slope of the ladder. Mr. Hughes opines in his report that this defect caused the incident involving Andrew Shecktor.

The deposition of Richard Hughes was taken in this matter on July 12, 2011. Mr. Hughes does not consider himself an expert in ladder design. He never went to

the scene of the incident, never looked at the ladder involved in this case and never read the deposition of Andrew Shecktor. The only information Mr. Hughes has regarding the incident was provided in a conference call with Andrew Shecktor and his lawyer on March 4, 2011. Mr. Hughes concedes that most accidents involving ladders are caused by operators in that operators make the ladder unstable in what they are doing with the ladder and in not properly setting it up.

Mr. Hughes admits that the ground surface on which the ladder feet were placed at the time of the incident was not flat, and he had no information regarding whether there were any roots above the ground level. He acknowledges that it is important for the feet of the ladder to be in contact with the ground surface as part of properly setting up the ladder.

Mr. Hughes was not aware when he wrote his report that while Mr. Shecktor was on the ladder, the branch grabbed the tool and caused the ladder to move and become unstable. He has no information regarding what happened to the feet of the ladder when that occurred, does not know if they remained flat on the ground and admits he would be speculating about the condition of the feet after that part of the incident.

Further, Mr. Hughes admitted at his deposition that although he initially believed that the ladder moved out instead of moving left or right during the incident, Mr. Shecktor testified that the ladder moved to the left an inch or two

while Mr. Shecktor was climbing down the ladder, which is an indication of instability. Accordingly, Mr. Hughes cannot rule out that the incident was caused by instability of the ladder created by the manner in which Mr. Shecktor was using it. He admitted at his deposition that he cannot state to a reasonable degree of engineering certainty that the issue with the slot in the feet of the ladder caused the incident involving Mr. Shecktor.

Following the deposition of Mr. Hughes, Plaintiffs submitted a supplemental report from Richard Hughes dated July 21, 2011. In his supplemental report, Mr. Hughes attempts to undo the aforementioned deposition testimony regarding whether he can say to a reasonable degree of certainty that the incident was not caused by instability created by Mr. Shecktor. However, neither Mr. Hughes, in his supplemental report, nor Mr. Shecktor, in his deposition, can state what the condition of the ladder feet were after the initial event involving the tree limb which moved the ladder. As such, plaintiffs have not, *inter alia*, established a basis on which the jury could find that the alleged defect in the ladder caused the accident.

III.    **STATEMENT OF QUESTIONS INVOLVED**

A.    Whether plaintiff's have established a prima facie cause of action for negligence against Louisville Ladder, where their expert cannot state whether the alleged defect in the ladder caused the incident and the jury would be left to speculate about causation?

**SUGGESTED ANSWER:**    No.

IV.    **ARGUMENT**

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense -- on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." *Id.*

The procedure for requesting summary judgment is set forth in Rule 56(c), which provides as follows:

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only) admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* After the foregoing is submitted, the provisions of Rule 56(e) apply. This rule provides as follows:

(e) Failing to Properly Support of Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address an assertion of fact of fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Interpreting prior Rule 56 standards,[2] the United States Supreme Court has held that the moving party must initially identify the basis for its motion and cite portions of the record which demonstrate that no genuine issues of material fact remain to be determined.[3] Once that is done, the adverse party cannot simply identify some evidence in support of its claim. Rather, the adverse party must

---

[2] Fed. R. Civ. P. 56 was amended effective December 1, 2010.

[3] *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986).

show "enough evidence to enable a jury to reasonably find for the non-moving party on the issue."[4]

In addition, where the "non-movant bears the burden of proof on the issue which is the subject of the summary judgment motion, and is confronted by the movant's argument that the facts established through the discovery process do not support the claim, the party must identify evidence of record sufficient to establish every element essential to the claim."[5] In order to establish a prima facie cause of action sounding in negligence under Pennsylvania Law[6] against Louisville Ladder, plaintiffs must establish "that the defendant had a duty 'to conform to a certain standard of conduct;' that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage."[7]

Although Louisville Ladder denies that it was negligent in the design of the ladder, the focus of this motion for summary judgment is plaintiff's failure to establish sufficient facts upon which the jury could determine that the alleged defect in the design of the ladder caused the July 16, 2006 involving Mr. Shecktor.

---

[4] *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1308 (3rd Cir. 1995), citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

[5] *Petrucelli*, 46 F.3d at 1308, citing *Celotex, supra*.

[6] It is not disputed that this Court, sitting in diversity, must follow Pennsylvania law in this action. *Pavlik v. Lane Ltd. Tobacco Exporters Int'l.*, 135 F.3d 876, 881 (3d Cir. 1998).

[7] *Phillips v. Cricket Lighters*, 576 Pa. 644, 841 A.2d 1000, 1008 (2003) (citation omitted).

A review of the evidence makes clear that Louisville Ladder is entitled to summary judgment on plaintiffs' claims.

Plaintiffs claim that the incident was caused by the design of the shoes of the ladder, which Mr. Hughes opines in his March 8, 2011 report, and restates in his deposition, "allowed for improper slope of the ladder plus it allowed for additional horizontal force on the bearing instead of vertical force on the bearing in the event it started to move." Exhibit "G," page 3, conclusion 3. However, in that same report, and in his deposition, Mr. Hughes opines that Mr. Shecktor set the ladder up properly and at the proper angle. Exhibit "G," page 2; Exhibit "H," page 74. Accordingly, even if Mr. Hughes is correct and the design "permits" the ladder to be set-up at an improper angle, there is no evidence that Mr. Shecktor did so.

Further, and more importantly, Mr. Shecktor testified that he felt no instability whatsoever in the ladder when he initially climbed and used it. It was not until he leaned far to his right, contrary to the instructions and warnings on the ladder, and after the initial event during which the branch grabbed the tool he was using and caused the ladder to move to the right and back to the left, that the second event occurred, during which the ladder moved again to the left and caused Mr. Shecktor to jump from the ladder. Neither Mr. Shecktor, nor his expert Richard Hughes, can testify what happened to the ladder shoes following the initial

event, i.e., whether the shoes stayed flat on the ground as they were allegedly installed or whether they were now off the ground in some position.

Mr. Hughes, who considers himself a "safety expert," admits that the primary causes of accidents involving ladders are improper set-up and instability created by users while performing actions on ladders. In light of Mr. Shecktor's deposition testimony regarding his use of the ladder on the date of this accident, which Mr. Hughes did not review prior to writing his report, Mr. Hughes admitted at his deposition that he cannot state to a reasonable degree of engineering certainty that the issue with the slot in the feet of the ladder caused the incident involving Mr. Shecktor.

Accordingly, plaintiff cannot establish whether the alleged defect, or the instability created by Mr. Shecktor's actions, caused the second event and the injuries to Mr. Shecktor's feet. The jury would have to speculate on this issue in order to reach a verdict on causation. It is well-established that a jury cannot be permitted to speculate. Accordingly, summary judgment is properly entered in favor of Louisville Ladder.

**WHEREFORE**, Defendant, Louisville Ladder, Inc., respectfully requests this Honorable Court to enter Summary Judgment in its favor and against the Plaintiffs.

                                            **SWEENEY & SHEEHAN**

By: /s/ J. Michael Kunsch
      J. Michael Kunsch
      Identification No. PA 61922
      Attorney for Defendants
      1515 Market Street, Suite 1900
      Philadelphia, Pennsylvania 19102
      Telephone (215) 563-9811
      Facsimile 215.557.0999
      michael.kunsch@sweeneyfirm.com

DATE: AUGUST 30, 2011