IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW M. SHECKTOR and JEAN B. MARSHMAN | : CIVIL ACTION |
| v. | : HON. JOHN E. JONES, III |
| LOUISVILLE LADDER, INC. | : NO. 4:09-cv-1570 |

## REPLY BRIEF IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, LOUISVILLE LADDER, INC.

Plaintiff's Complaint arises out of an incident of July 16, 2006, during which Andrew Shecktor claims he was injured while he was using a Louisville Ladder Model L-2323-16 aluminum extension ladder to trim branches at his home. Pursuant to Fed. R. Civ. P. 56, and L.R. 56.1, Louisville Ladder filed a Motion for Summary Judgment on August 30, 2011 (Doc. No. 64), together with a Statement of Facts in Support of the Motion for Summary Judgment (Doc. No. 65) and a Brief (Doc. No. 66). Requesting summary judgment, Louisville Ladder argued that Plaintiffs could not establish, as a matter of law, that it was negligent and/or that any defect in the ladder caused the incident involving Andrew Shecktor.

On October 4, 2011, Plaintiffs filed a Response in Opposition to the Motion for Summary Judgment (Doc. No. 70). Due to the fact that Plaintiffs' counsel had submitted confidential Louisville Ladder design drawings which were the subject of a Protective Order (Doc. No. 31) as part of their response, Plaintiffs sought

permission and subsequently filed an Amended Response in Opposition to the Motion for Summary Judgment on October 13, 2011 (Doc. No. 74). Plaintiffs' response is insufficient and inadequate, and fails to address the central arguments advanced in Louisville Ladder's Motion for Summary Judgment. Accordingly, Louisville Ladder files this Reply Brief.

As required by L.R. 56.1, Louisville Ladder submitted a detailed Statement of Uncontested Facts in Support of the Motion for Summary Judgment (Doc. No. 65). The Statement of Facts set forth in detail the testimony of Andrew Shecktor regarding how the accident happened, as well as the testimony of plaintiff's liability expert, Richard Hughes, regarding the case facts and his opinions. L.R. 56.1 requires a party opposing a Motion for Summary Judgment to file a response to the numbered paragraphs set forth in the Movant's Statement of Facts, to including references to the parts of the record that support the statements. L.R. 56.1 further states that "all material facts set forth in the Statement required to be served by the moving party will be deemed to be admitted unless controverted by the Statement required to be served by the opposing party." Since, Plaintiffs have filed no opposition to Defendant's Statement of Facts, the Statement of Facts is deemed admitted pursuant to L.R. 56.1.

Despite agreeing with Louisville Ladder that the Complaint filed by Plaintiffs sets forth only a negligence cause of action (Plaintiffs' Opposition, Doc.

No. 74, Question Involved, page 4), Plaintiffs' Brief does not even address the standards for a negligence-based product liability action under Pennsylvania law. Rather, Plaintiffs' Response inexplicably contains only a *pro forma* statement of Pennsylvania law regarding strict liability (Plaintiffs' Opposition, Doc. No. 74, pages 5-6).

Plaintiff's burden of proof in their negligence claim is well-settled. In order to establish their prima facie claim, they "must show: (1) a duty or obligation, recognized by law, requiring Defendant to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another."[1] Regarding causation, plaintiffs must establish both cause in fact and proximate cause.[2] To establish cause in fact, or but for causation, plaintiffs must establish "that the alleged injury would not have occurred but for the negligent conduct of the defendant."[3] Proximate cause requires the defendant's acts to be a "substantial factor in bringing about the

---

[1] *Nilson v. Hershey Entertainment and Resorts Company*, 649 F.Supp.2d 378, 386 (M.D. Pa. 2009) (citation omitted).
[2] *Galullo v. Federal Express Corp.*, 937 F. Supp. 392, 395-396 (E.D. Pa. 1996). See *Cutshall v. Photo Medic Equipment, Inc.*, 2000 W.L. 1028548 (M.D. Pa. 2000).
[3] *Galullo*, 937 F.Supp. at 396.

plaintiff's harm."[4] The Third Circuit, and this Court, have noted that "proximate cause poses questions of law which require the court to determine whether the defendant's negligence was so remote that, as a matter of law, he or she cannot be liable for the harm which subsequently occurred."[5]

Plaintiffs' Opposition is based solely upon two reports authored by their liability expert, Richard Hughes, together with the entirety of his deposition, taken on July 12, 2011. Rather than arguing against Summary Judgment, however, the reports submitted by Mr. Hughes, and his deposition, provide an ample basis upon which to grant Louisville Ladder's Motion.

Mr. Hughes' initial report was cursory, relying on no evidence of record regarding how the accident happened and instead relying upon alleged oral statements made by Mr. Shecktor to Mr. Hughes shortly before he authored his report. Deposition of Richard Hughes, Exhibit "H" to Defendant's motion, p. 50-53. This was explored fully during the deposition of Mr. Hughes, which was the first time he had seen the deposition testimony of Andrew Shecktor. During the deposition, it became apparent that Mr. Hughes had no idea how the accident happened. Importantly, he had no idea that several minutes prior to the alleged incident, while Mr. Shecktor was cutting a branch from the tree, the branch fell

---

[4] *Id.*
[5] *Cutshall*, supra, at *8, *citing Redland Soccer Club, Inc. v. Dept. of the Army of the United States*, 55 F.3d 827, 851 (3d Cir. 1994).

towards him, grabbed the pruning shear in his arm and pulled the ladder off center to the right and then back to the left. Deposition of Richard Hughes, p. 94. It was not until after that event that Mr. Shecktor claims to have felt instability in the ladder, which caused him to jump from the ladder and the ladder to fall away from the tree. After reading that testimony for the first time during his deposition that Mr. Hughes admitted during his deposition that he could not state to a reasonable degree of engineering certainty that any defect in the ladder caused the accident. Deposition of Richard Hughes, p. 110-111.

Faced with this startling admission, Plaintiffs' counsel subsequently requested Mr. Hughes to issue a subsequent report, which contradicted his deposition testimony. To the extent there is any issue of fact, it is solely within Mr. Hughes' mind. Plaintiffs' counsel cannot create an issue of fact by having his expert write a contradictory supplemental report.

In addition, and more importantly, the supplemental report does not fill the void in Plaintiffs burden regarding causation. As set forth in Louisville Ladder's Motion, Mr. Shecktor testified that he felt no instability whatsoever in the ladder when he initially climbed and used it. It was not until he leaned far to his right, contrary to the instructions and warnings on the ladder, and after the initial event during which the branch grabbed the tool he was using and caused the ladder to move to the right and back to the left, that the second event occurred. It was only

then that the ladder moved again to the left and caused Mr. Shecktor to jump from the ladder. Neither Mr. Shecktor, nor his expert, Richard Hughes can testify what happened to the ladder shoes following the initial event, i.e., whether the shoes stayed flat on the ground as they were allegedly installed or whether they were now off the ground in some position.

Mr. Hughes, who considers himself a safety expert, admits that the primary causes of accidents involving ladders are improper set up and instability created by users while performing actions on ladders. Deposition of Richard Hughes, p. 82-83. In light of Mr. Shecktor's deposition testimony regarding his use of the ladder on the date of the accident, and the testimony of Mr. Hughes, Plaintiffs cannot establish whether the alleged defect, or the instability created by Mr. Shecktor's actions, caused the second event and the injuries to Mr. Shecktor's feet. The jury would have to speculate on this issue in order to reach a verdict on causation. It is well established that a jury cannot be permitted to speculate on the issue of causation.[6] Accordingly, Summary Judgment must be entered in favor of Louisville Ladder.

---

[6] *Galullo, supra*, 937 F.Supp. at 398-399.

**WHEREFORE,** Defendant, Louisville Ladder, Inc., respectfully requests this Honorable Court to enter Summary Judgment in its favor and against the Plaintiffs.

**SWEENEY & SHEEHAN**

By:   /s/ J. Michael Kunsch
      J. Michael Kunsch
      Identification No. 61922
      Attorney for Defendant
      1515 Market Street, Suite 1900
      Philadelphia, PA 19102
      Telephone: (215) 563-9811
      Facsimile: (215) 557-0999
      michael.kunsch@sweeneyfirm.com

DATE: OCTOBER 17, 2011

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW M. SHECKTOR and JEAN B. MARSHMAN | : CIVIL ACTION |
| v. | : HON. JOHN E. JONES, III |
| LOUISVILLE LADDER, INC. | : NO. 4:09-cv-1570 |

**CERTIFICATE OF SERVICE**

I, J. Michael Kunsch, Esquire, do hereby certify that a true and correct coy of the **REPLY BRIEF IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, LOUISVILLE LADDER, INC.** was electronically filed with the Court on October 17, 2011.

**SWEENEY & SHEEHAN**

By: /s/ J. Michael Kunsch
J. Michael Kunsch
Identification No. 61922
Attorney for Defendants
1515 Market Street, Suite 1900
Philadelphia, PA 19102
Telephone: (215) 563-9811
Facsimile: (215) 557-0999