# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREW M. SHECKTOR and** | : | |
| **JEAN B. MARSHMAN,** | | |
| | : | |
| **Plaintiffs,** | | **CIVIL ACTION NO. 4:09-1570** |
| | : | |
| **v.** | | **(JONES, D.J.)** |
| | : | **(MANNION, M.J.)** |
| **WALMART STORES, INC. and** | | |
| **LOUISVILLE LADDER, INC.,** | : | |
| | | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION[1]

Pending before the court is a motion for summary judgment on behalf of defendant Louisville Ladder, Inc. ("Louisville Ladder"). (Doc. No. 64). For the reasons set forth below, the court recommends that the defendant's motion be **DENIED**.

## I.    FACTS AND PROCEDURAL BACKGROUND[2]

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

[2] Local Rule 56.1 provides:

A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs,

The plaintiff, Andrew Shecktor, claims that he was injured on July 16, 2006, while using a Louisville Ladder Model L-2323-16 aluminum extension ladder to trim branches at his home.

## A.   The Ladder

Andrew Shecktor purchased the subject 16' aluminum extension ladder from Home Depot on November 25, 2005. The subject ladder consists of two 8' sections, a base section and an upper movable ("fly") section. Each section is constructed with two side rails that are connected by rungs spaced every foot along the side rail length. Rung locks affixed to the fly section at the third

---------------------

as to which the moving party contends there is no genuine issue to be tried.

The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.

Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

Here, the plaintiff has failed to file a response to the defendant's statement of material facts. Consequently, the facts set forth in the defendants' statement of material facts will be deemed admitted. As such, record citations will be omitted.

rung allow for length adjustment at one-foot increments, up to a maximum extended length of 13'. The base section has shoes on the bottom, which are attached to the ladder with a fixed bolt in the rail which passes through a slot in the shoe. This design permits the shoes to swivel to ensure they can be positioned flat on different surfaces. In addition, the slot design permits the shoes to move vertically so the shoes can be positioned flat where the ground elevations are different between the left and right rails.

### B.   The Incident of July 16, 2006

The plaintiff, Andrew Shecktor, intended to use the ladder on July 16, 2006 to cut dead branches from a 120' pine tree in his backyard. He set the ladder up one time prior to the incident, with the feet flat on the ground, two rungs overlapping, and the rung locks locked.

Mr. Shecktor intended to cut three branches from the tree. He made initial cuts to each of the branches from the ground using a pruning shear and then climbed the ladder to make the final cut on each branch. He had completely cut off two of the branches while on the ladder prior to the incident.

Immediately prior to the incident, Mr. Shecktor was attempting to make the final cuts on the third branch, which was approximately 8' long and 2'1/2" in diameter and weighing approximately 35 pounds. He climbed the ladder to

3

the seventh rung, and had his left hand on a rung of the ladder and cut the branch with the pruning shear using his right hand.

While Mr. Shecktor was cutting the third branch, it twisted and fell toward him. The branch had grabbed the pruning shear the plaintiff was holding in his right hand and had pulled him and the ladder slightly off center to the right. When the ladder went to the right, the plaintiff released the tool and the ladder moved back to the left. The plaintiff then put his right hand back on the ladder and began to climb down. When the plaintiff made his first step to descend the ladder, the left side of the ladder dropped 1"-2" to the left and moved away from the tree. Mr. Shecktor jumped off the ladder and landed flat on both of his feet, suffering injuries.

## C.    Plaintiff's Theory of Liability and Expert

In support of plaintiffs' claims, the plaintiffs have produced a report authored by a civil engineer, Richard Hughes, P.E., dated March 8, 2011. It is the opinion of Richard Hughes that the design of the feet on the subject ladder are defective because the slotted bolt hole in the shoe allows for improper slope of the ladder. Mr. Hughes opines in his report that this defect caused the incident involving the plaintiff.

However, at Mr. Hughes' deposition on July 12, 2011, he testified that

when he wrote his report, he was not aware that while Mr. Shecktor was on the ladder, the branch grabbed the tool and caused the ladder to move and become unstable. He also indicated that he had no information regarding what happened to the feet of the ladder when that occurred, does not know if they remained flat on the ground, and admits he would be speculating about the condition of the feet after that part of the incident.

Further, at the deposition of Mr. Hughes, he learned that Mr. Shecktor had testified that the ladder moved to the left an inch or two while he was climbing down the ladder, which is an indication of instability. Accordingly, Mr. Hughes testified that he could not rule out that the incident was caused by instability of the ladder created by the manner in which Mr. Shecktor was using it. Thus, he admitted at his deposition that he could not state to a reasonable degree of engineering certainty that the issue with the slot in the feet of the ladder caused the incident involving Mr. Shecktor.

However, following the deposition, the plaintiffs submitted a supplemental report from Mr. Hughes dated July 21, 2011. In his supplemental report, Mr. Hughes states:

> During my deposition on July 12, 2011, the defense counsel, Mr. Michael Kunch asked specific questions with regards as how the ladder fell off the tree. Mr. Kunch quoted from Mr. Shecktor's sworn testimony that the ladder fell sideways to the left and then

struck the ground. Kunch asked me if this would alter or change my opinions based on this information. My opinions were based on the base of the ladder moving initially outward. While Mr. Kunch quoted from Shecktor's deposition he never mentioned Shecktor's statement which followed the side sway testimony.

On page 86 of Shecktor's deposition he describes the initial movement of the ladder before his fall; 'As I made my first step down, the ladder, the left side of the ladder dropped about an inch maybe two inches and destabilized me'. On page 89, Mr. Shecktor stated, 'It fell kind of backwards to where the feet were'. This is consistent with my opinion of the flawed slot design causing the problem wherein it can cause horizontal loads. This is important because this indicates that the base of the ladder slid backwards first, then it fell off the tree. The drop of an inch or two as Shecktor describes would be the downward movement available in the cleat shoe due to the 1-1/2 inch vertical slot as shown in Louisville Ladder shop drawing F-1825 as drawn in the year 2002 (See attached).

Based on a review of the shop drawings and Shecktor's sworn testimony my original opinion remained unchanged; the cleat design is flawed and caused instability in the ladder.

(Doc. No. 70 at 152).

### D.   Procedural Background

Plaintiffs, Andrew M. Shecktor and Jean B. Marshman, commenced this product liability action by filing a Writ of Summons in the Court of Common Pleas of Montgomery County, Pennsylvania on July 16, 2008. The plaintiffs later filed a complaint on January 12, 2009. The defendants then timely removed this action to the Eastern District of Pennsylvania on February 3,

2009, and subsequently successfully transferred the venue of this matter to the Middle District of Pennsylvania.

On August 30, 2011, defendant Louisville Ladder filed a motion for summary judgment, (Doc. No. 64), that was accompanied by a statement of facts, (Doc. No. 65), and a brief in support, (Doc. No. 66). Accordingly, the plaintiffs then filed a brief in opposition, (Doc. No. 70), but failed to submit any response to the defendant's statement of material facts. The defendant then filed a reply brief, (Doc. No. 75). Thus, this motion is ripe for our consideration.[3]

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901*

---

[3] The court notes that the defendant requested oral argument on this motion. However, the court concludes that oral argument is unnecessary based on the adequate submissions by the parties. *See* Local Rule 7.9.

F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this

initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).[4]

## III.   ANALYSIS

"In a products liability suit based on a theory of negligent product design in Pennsylvania, a plaintiff must prove: (1) the manufacturer owed a duty to

---

[4] If the nonmoving party has the burden of proof at trial, the party moving for summary judgment is not required to "support its motion with affidavits or other similar material *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, in order to discharge this "initial responsibility." In this situation, the movant "'show[s]'--that is, point[s] out to the district court-- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

the plaintiff; (2) the manufacturer breached that duty; and (3) the breach was the proximate cause of the plaintiff's injuries." *Maldonado v. Walmart Store*, No. 08-3458, 2011 U.S. Dist. LEXIS 50255, at *46- 47 (E.D. Pa. May 9, 2011) (citing *Dauphin Deposit Bank and Trust Co. v. Toyota Motor Corp.*, 408 Pa. Super. 256, 596 A.2d 845, 849-50 (Pa. Super. Ct. 1991)). "Proximate cause is a term of art denoting the point at which legal responsibility attaches for the harm to another arising out of some act of the defendant." *Hamil v. Bashline*, 256, 392 A.2d 1280, 1284 (Pa. 1978). To establish the point of attachment, the plaintiff must show that the breach of duty was a "substantial factor" leading to the injury. *Id.* The breach need not be the exclusive cause of the injury, but merely a substantial cause regardless of whether other factors contributed to the injury. *Id.* at 1284-85.

The dispute here centers around causation. The defendant, Louisville Ladder, argues that it is entitled to summary judgment on plaintiff's negligence claim in Count I of the complaint because the plaintiff cannot establish that the design of the feet of the ladder caused the incident on July 16, 2006. Specifically, the defendant asserts that there is no evidence regarding the condition of the feet of the ladder after the initial event involving the tree limb which moved the ladder. Therefore, according to the defendant, Mr. Shecktor

cannot establish that the incident was not caused by instability of the ladder that he had created. Moreover, the defendant urges the court to discount the supplemental report of Mr. Hughes, because this supplemental report, also does not state what the condition of the ladder feet were after the initial event involving the tree limb which moved the ladder.

However, by way of response, the plaintiff points to the supplemental report of Mr. Hughes, and urges the court to find that the plaintiff has "established a basis on which the jury could find that [the] defect in the ladder caused the accident." (Doc. No. 70 at 11). Specifically, Mr. Hughes' supplemental report states:

> During my deposition on July 12, 2011, the defense counsel, Mr. Michael Kunch asked specific questions with regards as how the ladder fell off the tree. Mr. Kunch quoted from Mr. Shecktor's sworn testimony that the ladder fell sideways to the left and then struck the ground. Kunch asked me if this would alter or change my opinions based on this information. My opinions were based on the base of the ladder moving initially outward. While Mr. Kunch quoted from Shecktor's deposition he never mentioned Shecktor's statement which followed the side sway testimony.
>
> On page 86 of Shecktor's deposition he describes the initial movement of the ladder before his fall; 'As I made my first step down, the ladder, the left side of the ladder dropped about an inch maybe two inches and destabilized me'. On page 89, Mr. Shecktor stated, 'It fell kind of backwards to where the feet were'. This is consistent with my opinion of the flawed slot design causing the problem wherein it can cause horizontal loads. This is important because this indicates that the base of the ladder slid

11

> backwards first, then it fell off the tree. The drop of an inch or two as Shecktor describes would be the downward movement available in the cleat shoe due to the 1-1/2 inch vertical slot as shown in Louisville Ladder shop drawing F-1825 as drawn in the year 2002 (See attached).
>
> Based on a review of the shop drawings and Shecktor's sworn testimony my original opinion remained unchanged; the cleat design is flawed and caused instability in the ladder.

(Doc. No. 70 at 152). Thus, Mr. Hughes found that regardless of the condition of the feet of the ladder, after the ladder had initially moved, the manner in which the ladder subsequently moved and fell, supports a finding that the cleat design was flawed and caused instability in the ladder. Consequently, the court finds that the plaintiff has come forth with evidence that supports a finding that the asserted defect in the ladder caused the accident on July 16, 2006. As such, the court recommends that the defendant's motion for summary judgment be **DENIED**. *See Hamil*, 392 A.2d at 1284-85; *Smith v. Bell Tel. Co. of Pennsylvania*, 153 A.2d 477, 479-80 (Pa. 1959) (Because the determination of proximate cause often depends on the resolution of factual questions and inference, the issue of whether the defendant's breach proximately caused the plaintiff's injury is usually a question of fact for the jury, unless there is no genuine issue of material fact.).

## V.    RECOMMENDATION

For the reasons elaborated above, **IT IS RECOMMENDED THAT,**

defendant Louisville Ladder's motion summary judgment, (Doc. No. 64), be

**DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**DATE:** February 27, 2012
O:\shared\REPORTS\2009 Reports\09-1570-01.wpd

13